# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BLUEFIELD DIVISION

| | |
|---|---|
| **ROBERT STONE,** ) | |
| ) | |
| Petitioner, ) | |
| ) | **CIVIL ACTION NO. 1:16-10763** |
| **v.** ) | |
| ) | |
| **BARBARA RICKARD, Warden,** ) | |
| ) | |
| Respondent. ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

On November 10, 2016, Petitioner, acting *pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody. (Document No. 1).[1] In his Petition, Petitioner complains that his due process rights were violated during disciplinary proceedings. (Id.) Petitioner explains that he received an Incident Report on November 14, 2015, for his alleged possession of a weapon in violation of Offense Code 104. (Id.) Petitioner states that his due process rights were violated because he was "found guilty for the above incident without the DNA and fingerprint analysis." (Id.) Petitioner states that he "should not be held accountable for the weapon that someone else placed under the bottom lip of his locker; an area that anyone could have accessed." (Id.) Petitioner alleges that Case Manager Baxter "knew the weapon was planted." (Id.) Petitioner states that Case Manager Baxter "conducted his own investigation and placed a memo in [Petitioner's] central file for the parole commission concerning the planting of said weapon." (Id.) Petitioner argues that his due process rights were

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

violated because "the BOP never provided the results of the DNA and finger-print analysis which they took for this specific case/investigation." (Id.) Petitioner next contends that even though he requested prison staff to view the security camera footage for exculpatory evidence, the request was denied. (Id.) Petitioner further states that "the DHO report should have been returned in 30 days according to policy, [but] it took 40 days." (Id.) Petitioner argues that he is innocent of the charge contained in the Incident Report and staff knew the weapon was planted by another inmate. (Id.) As relief, Petitioner requests that the Incident Report be expunged from his record. (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of the Unit Discipline Committee decision referring the charges to a DHO for final disposition (Id., p. 14.); (2) A copy of Petitioner's Administrative Remedies (Id., pp. 15 – 17, 23 - 29.); (3) A copy of the Incident Report dated November 14, 2015, charging Petitioner with violating Offense Code 104, Possession of a Weapon (Id., p. 18.); (4) A copy of the Discipline Hearing Officer Report dated February 10, 2016 (Id., pp. 19 – 22, 31 - 34.); and (5) A copy of the BOP's response to Petitioner's FOIA request dated March 11, 2016 (Id., p. 30.).

By Order entered on November 16, 2016, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of Habeas Corpus sought by the Petitioner in this case should not be granted. (Document No. 5.) On December 16, 2016, Respondent filed his Response to the Order to Show Cause. (Document No. 8.) Respondent argues that Petitioner's Petition should be denied because "Petitioner's challenge to a disciplinary action that did not result in the loss of good conduct time is not cognizable in a *habeas corpus* petition." (Id.) As Exhibits, Respondent attaches the

following: (1) The Declaration of Sharon Wahl (Id., pp. 6 and 14.); (2) A copy of Petitioner's Judgment and Commitment Order as filed in Criminal Action 85-00129 (Id., p. 8.); and (3) A copy of the Discipline Hearing Officer Report dated February 10, 2016 (Id., pp. 10 – 13.).

On December 27, 2016, Petitioner filed his Reply. (Document No. 10.) In his Reply, Petitioner argues that "habeas corpus is the correct avenue to challenge a disciplinary action." (Id.) Petitioner further states that the Incident Report will affect the duration of Petitioner's custody." (Id.) Petitioner then continues to assert the same arguments as asserted in his original Petition. (Id.) Specifically, Petitioner argues that the DHO erred by failing to consider DNA or fingerprint evidence. (Id.) As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's "Sentence Monitoring Computation Data As Of 06-29-2006" (Id., pp. 6 – 7, 9.); (2) A copy of a "Notice of Action" from the United States Parole Commission dated July 13, 2005 (Id., p. 8.); and (3) A copy of the Unit Discipline Committee decision referring the charges to a DHO for final disposition (Id., p. 10.).

**DISCUSSION**

**1.      Due Process Violation Pursuant to Wolff:**

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See

U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)(holding that an inmate cannot be deprived of a protected liberty interest in good-time credits without procedural due process).

In the instant case, Petitioner does not dispute that disciplinary actions did not result in a loss of good time credit. Petitioner further does not dispute that he is serving a life sentence where the sentencing judge recommended that "the United States Parole Commission or its successor <u>not</u> consider the Defendant a suitable candidate for parole at any time."[2] (Document No. 8, p. 8.) Petitioner, however, argues that disciplinary action will affect his possible release date for parole. (Document Nos. 1 and 9.) The Fourth Circuit has recognized that a petitioner has no liberty interest protected by the Due Process Clause in an institution's practice of using good time credit for the purposes of calculating parole eligibility dates. <u>Waddell v. Department of Corrections</u>, 680 F.3d 384, 395 (4th Cir. May 25, 2012)(noting that the "DOC has never used good time credits for the purpose of reducing a life sentence"). Thus, the undersigned finds that Petitioner has no liberty interest in the Parole Commissions' use of an inmate's good time credit for the purpose of calculating a possible parole eligibility date. Since Petitioner fails to identify a liberty interest protected by the Due Process Clause, Petitioner cannot establish a deprivation of his due process rights. <u>See</u> <u>Chisolm v. SCDC</u>, 2013 WL 1567395 (D.S.C. Feb. 7, 2013)("Because Petitioner has failed to show that the challenged disciplinary conviction enhanced his sentence in such a way as to implicate a protected liberty interest and give rise to the protection of the Due Process Clause, the instant § 2241 petition is subject to summary dismissal."); <u>Jones v. Wilson</u>, 2009 WL 3211512 (E.D.Ky. Oct. 1, 2009)(finding that procedural due process was not required where the disciplinary penalty was only a thirty-day stay in

---

[2] Petitioner was convicted in this District of "causing the victim to travel in interstate commerce with the intent that a murder be committed in violation of the laws of West Virginia as consideration for a promise for payment of money by others as charged in Count II of the within indictment, in violation of 18 U.S.C. § 1952A." On December 5, 1985, United States District Judge Charles H. Haden II sentenced Petitioner to life and recommended that "the United States Parole Commission or its successor <u>not</u> consider the Defendant a suitable candidate for parole at

segregation, there was no impact on the length of petitioner's sentence, and no atypical hardship in relation to the ordinary incidents of prison life). Accordingly, the undersigned finds that Petitioner's Section 2241 Petition should be dismissed.

Notwithstanding the foregoing, the undersigned will briefly consider the merits of Petitioner's claim. For purposes of considering the merits of Petitioner's Petition, the undersigned will assume that the disciplinary sanction impacted the duration of Petitioner's sentence. When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to

---

any time." (Document No. 8, p. 8.)

confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Having thoroughly examined the record in this case, the undersigned finds no indication of error of constitutional magnitude in the disciplinary proceedings. It is clearly evident that in charging and considering Petitioner's violation of Offense Code 104, prison officials adequately adhered to the policies and procedures as prescribed in 28 C.F.R. § 541 and the Bureau of Prisons' Program Statement 5270.09. A review of the record reveals that Petitioner received all of the minimum due process safeguards set forth in Wolff. Petitioner received all documents pertinent to the charges against him, was advised of his rights, and had ample opportunity to present a defense to those charges. The record reveals that Petitioner received written notice of the charges at least 24 hours before the DHO hearing. Specifically, Petitioner received a copy of the Incident Report[3] on November 15, 2015, and the DHO hearing was conducted on January 5, 2016. Although Petitioner does not dispute that he received a copy of the DHO's Report, Petitioner complains that his due process rights were violated because the DHO's Report should have been returned in 30 days and it took 40 days. The regulation provides that an inmate "will receive a written copy of the DHO's decision following the hearing. See 28 C.F.R. § 541.8(h).

---

[3] The Incident Report dated November 14, 2015, described the incident as follows (Document No. 1, p. 18.):

> On November 14, 2015, I, Senior Officer C. Powell, was assigned as the O-B Unit Officer. At approximately 11:20 AM I conducted a search of Cell 002-012. During the search of the locker assigned to Inmate Stone, Robert 01281-088 I discovered a homemade weapon placed on the bottom lip under the locker. The weapon is approximately six inches in length and has a Plexiglass blade with a foam handle tied on to it. I secured the Cell and Notified the Operations Lieutenant and SIS.

The BOP's Program Statement 5270.09 provides that that an inmate is "ordinarily" entitled to a copy of the DHO's decision within 15 work days of the DHO's decision. See P.S. 5270.09 ("The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision.") The record reveals that the DHO's decision was entered on February 10, 2016, and Petitioner received a copy of the DHO Report on February 16, 2016. (Document No. 1, p. 22.) The undersigned, therefore, finds that prison officials did not violate Section 541.8 or P.S. 5270.09. Furthermore, the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. See Smith v. Cross, 2010 WL 5525178, * 5 (N.D.W.Va. June 11, 2010)("[T]he fact that the petitioner did not receive the incident report until seven days after the incident occurred, and did not have his UDC hearing within five working days does not present a denial of the petitioner's due process guarantees.") Accordingly, Petitioner's above due process claims is without merit as the record clearly reveals that Petitioner received a written copy of the DHO's decision.

Next, the undersigned will consider Petitioner's claim that his due process rights were violated because the DHO failed to review video footage and failed to consider DNA and fingerprint evidence.[4] In Wolff, the Supreme Court stated that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have lawfully committed. Wolff, 418 U.S. at 556, 94 S.Ct. at 2975. The Supreme Court explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant

---

[4] The undersigned notes that Petitioner fails to present any facts or evidence supporting his claim that exculpatory evidence existed in the form of video footage, DNA, or fingerprints.

in such proceedings does not apply." Id. Thus, "*Wolff* stands for the proposition that a prisoner is not guaranteed unfettered access to exculpatory evidence in the context of a disciplinary hearing." Johnson v. Warden, FCI Williamburg, 2014 WL 4825926, * 2 (D.S.C. Sept. 24, 2014), aff'd   597 Fed.Appx. 161 (4th Cir. 2015), cert. denied, ___ U.S. ___, 136 S.Ct. 556, 193 L.Ed.2d 430 (2015). In disciplinary hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). The requirement that the disciplinary authority's findings be supported by "some evidence" "does not in any way imply that prison disciplinary bodies must consider all possible evidence." Landry v. Adams, 2007 WL 869224, * 4 (E.D.Va. March 19, 2007)(finding petitioner's due process rights were not violated by the unavailability of surveillance video evidence). For the reasons explained below, the undersigned finds that the lack of video, DNA, and fingerprint evidence did not result in a violation of Petitioner's due process rights because there was "some evidence" to support the DHO's decision. See Pruitt v. Martin, 582 Fed.Appx. 319 (5th Cir. 2014)(finding that due process did not require prison officials to dust for fingerprints on a cell phone and the disciplinary proceeding satisfied the requirements of due process because there was "some evidence" to support the disciplinary conviction); Scott v. Stewart, 2017 WL 1807139, * 3 (D.Md. May 5, 2017)(finding no due process violation where the weapon was not subjected to DNA testing and fingerprint analysis because "some evidence" existed to support the DHO's findings); Ray v. Masters, 2017 WL 975948 (S.D.W.Va. Feb. 13, 2017)(finding no due process violation where the DHO failed to view video footage because "some evidence" supported the DHO's decision); Weston v. Fairley, 2013 WL 821408 (N.D.Oh. March 5,

2013)(finding no due process violation where no DNA evidence was taken from, and no fingerprint analysis was conduct on, the weapon found in petitioner's locker because there was "some evidence" to support the disciplinary decision); Uriciuolia v. Gutierrez, 2012 WL 2449909, * 6 n. 6 (C.D.Cal. May 1, 2012)(finding no due process right to fingerprinting or polygraph); Wlash v. Berkebile, 2011 WL 2417136, * 5(S.D.W.Va. June 13, 2011)(the absence of the security video footage did not violate Petitioner's due process rights because there was "some evidence" to support the DHO's decision); Henderson v. Commonwealth of VA, 2008 WL 204480 (W.D.Va. Jan. 23, 2008)(although petitioner claimed that the video surveillance footage would prove his innocence, the Court determined that petitioner's due process rights were not violated by the absence of additional evidence in the form of video footage because there was sufficient evidence to support the petitioner's punishment); Raynor v. Jackson, 2006 WL 33594333 (W.D.N.C. Nov. 20, 2006)(finding that petitioner's due process rights were not violated due to the disciplinary officer's failure to review video footage because there was "some evidence" to support the disciplinary officer's decision).

**2. Insufficient Evidence:**

Petitioner appears to contend that there was insufficient evidence to support the DHO's decision. Specifically, Petitioner contends that he should not be held accountable for the weapon found in his cell because there was no evidence that he hid the weapon in his cell. Petitioner argues that he was unaware of the weapon and the weapon must have been planted by another inmate. As stated above, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." Superintendent, Massachusetts Correctional Institution, 472 U.S. at 454, 105 S.Ct. at 2768("revocation of good time does not comport with 'the minimum

requirements of procedural due process' . . . unless the findings of the prison disciplinary board are supported by some evidence in the record"). The undersigned finds that prison staff and the DHO acted fully within their discretion in developing the evidence which resulted in the finding that Petitioner was guilty of violating Offense Code 104. The finding was supported by the evidence and a 30 day placement in disciplinary segregation was lawful and appropriate. In addition to the Incident Report and SIS Investigation, the DHO considered Petitioner's statement, the written statement of Correctional Office C. Powell, and two photographs of the weapon. (Document No. 8, pp. 11 - 13.) In finding that Petitioner violated Code 104, the DHO specifically stated that it relied upon the following:

> The specific evidence relied upon to support this finding is the eyewitness account of C. Powell, Correctional Officer, who provided a written report (incident report) declaring that on November 14, 2015, he was assigned as the OB, Unit Officer, and that at approximately 11:20 a.m., he conducted a search of cell 002-012. Officer Powell reports that during the search of the locker assigned to you he discovered a homemade weapon placed on the bottom lip under the locker. Officer Powell described the weapon as approximately six inches in length and having a Plexiglas blade with a foam handle tied on to it. I also relied on the photograph attached to the incident report that clearly depicts a homemade weapon measuring about six inches in length with a blade made from a clear material and having handle made out of something black tied to it.
>
> At the DHO hearing, you denied possessing the homemade weapon and said that you had never had a weapon in your possession. You said inmate [redacted] placed the weapon under your locker following an altercation involving you and [redacted] as well as several other inmates. You said that [redacted] had been saying that he was going to beat up inmate [redacted] and that you and inmate [redacted] approached [redacted] and told him to "chill out." You said your exchange with him was not hostile and described being firm while talking to [redacted], but denied ever threatening him in any way. You said you and [redacted] did not have any weapons on you when you talked to [redacted]. You said [redacted] did most of the talking. You said the next thing you knew there were "shanks" found under your locker and in the locker of your cellmate, inmate [redacted]. You denied ever possessing either of the weapons and requested the hearing be suspended until a fingerprinting analysis could be conducted of the contraband.

11

> In deciding this issue, I considered your denial of possessing this weapon and your version of the incident, but did not find any valid reason to absolve you from being held accountable for its presence inside of your assigned living quarters. A very thorough investigation into this matter was conducted by J. Vargas, SIS Lieutenant, which did not yield any credible evidence bolstering your notion that inmate [redacted] placed the contraband in your cell and under your locker. Additionally, I have noted that after being provided a copy of the charge against you and given an opportunity to provide a statement about the incident you elected to make no comment.[5] While you certainly have a right to remain silent at all stages of the disciplinary process, I have in turn drawn an adverse inference from this decision of yours. It's just not logical to me that a wrongly accused inmate, as you claim to be, would not be eager to discuss what you say are false charges against you with any staff member, yet this is exactly what you did. As we discussed at the hearing, suspending the hearing until a fingerprint analysis of the contraband could be conducted is not an option in administrative hearings such as this. Again, your theory that inmate [redacted] placed this dangerous weapon in your assigned cell and under your locker is not supported by any credible fact and I was not convinced that this was the case. The prevailing responsibility to make certain your assigned area is free and clear of contraband, rests on the occupants of each cell (P.S. 5270.09, Appendix C, Responsibly #4), and other key facts support the notion that you could have and should have known this contraband was present. In this case, the Officer did not use or require special tools to find the contraband and common sense dictates that if the Officer could easily search the cell and find the contraband then so too could have the cell's occupants. Therefore, based on the fact that a homemade weapon was found in your assigned living area, an area you have the responsibility to maintain free of such items, I find it prudent to hold you accountable and support the charge of Possession of a Weapon, a violation of code 104, of the inmate discipline policy.

(Id., pp. 11 - 12.) The record further reveals that the DHO Officer considered and rejected Petitioner's claim that he was unaware of the weapon and that it had been planted by another inmate. In McClung v. Hollingworth, 2007 WL 1225946 (4th Cir. Apr. 26, 2007), the Fourth Circuit concluded that "since a dangerous weapon was discovered in a cell that was the

---

[5] Petitioner appears to argue that the DHO officer incorrectly states that Petitioner refused to make a statement. Petitioner argues that the DHO's own report contradicts such because the DHO summarizes Petitioner's statement. The undersigned notes that Petitioner is incorrect in the above argument. The record reveals that the DHO is referring to Petitioner's initial failure to make a statement at the time of the issuance of the Incident Report -- not Petitioner's failure to make a statement at the disciplinary hearing.

'exclusive domain' of McClung and his cellmate, the constructive possession rule provides the necessary 'some evidence' sufficient to sustain McClung's disciplinary conviction." McClung v. Hollingworth, 2007 WL 1225946, * 3 (4th Cir. Apr. 26, 2007); also see Reynolds v. Williamson, 197 Fed.Appx. 196 (3rd Cir. 2006)(despite petitioner's claim that he did not possess tools necessary to retrieve the weapon from the plumbing, the court found "some evidence" supported DHO's conclusion that petitioner was in constructive possession of weapon recovered from plumbing of the cell where petitioner and his cellmate were the only persons with access to plumbing and cellmate did not claim ownership of weapon); Scott v. Stewart, 2017 WL 1807139, * 3 (D.Md. May 5, 2017)(rejecting prisoner's due process challenge to the lack of DNA or fingerprint analysis to support a claim of construction possession); Gonzalez-Martinez v. Drew, 2011 WL 6982247 (D.S.C. Dec. 16, 2011)(finding "some evidence" to support the DHO's decision that petitioner was in possession of a weapon where the weapon was located under a locker in Petitioner's cell); Perez v. Rios, 2009 WL 499141 (E.D.Ky. Feb. 27, 2009)(finding sufficient evidence to support DHO's finding that because petitioner was in control of his cell area, he was in possession of a hazardous tool). Based on the foregoing, the undersigned finds no violation of Petitioner's due process rights because there was "some evidence" to support the DHO's decision. As stated above, Petitioner was given written notice of the charges against him at least 24 hours before his hearing, Petitioner received a statement of the reasons for the unfavorable decision in the form of a written report, and Petitioner had the opportunity to call witnesses in his defense[6]. Accordingly, the undersigned finds that the

---

[6] Petitioner appears to indicate that he was not allowed to present witnesses. Petitioner argues that he provided a list of witnesses to prison staff as the information became available to him, but Petitioner claims that staff obstructed his witnesses. (Document No. 1, p. 12.) Although Petitioner now argues that staff obstructed his ability to call witnesses, the record does not

disciplinary hearing comported with the due process requirements.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document No. 1) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation

---

support his bald assertion. The DHO Report indicates that Petitioner failed to present any witnesses, but only sought the postponement of the hearing until fingerprint analysis could be conducted on the weapon. Subsequent to the DHO's adverse decision, Petitioner then complained that he wished to call C.O. Powell as a witness but C.O. Powell was unavailable as he had been transferred to the Veterans Administration at the time of the disciplinary hearing. (Document No. 8, p. 23.) As stated in the DHO Report, the DHO clearly considered a written statement by C.O. Powell. (*Id.*, pp. 20 – 21.) Petitioner further acknowledges that the notified the SIS Lieutenant of witnesses and the SIS Lieutenant interviewed those witnesses. (*Id.*, p. 23.) The DHO Report clearly indicates that the SIS Investigation of the SIS Lieutenant was considered by the DHO. (*Id.*, pp. 19 – 20.) The regulations clearly provide that an inmate may request witnesses appear at the disciplinary hearing to testify on his behalf, but the witnesses may not appear "if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institutional security, or they would present repetitive evidence." 28 C.R.F. § 541.8(3). The regulations further provide that if the requested witnesses are unavailable to appear, written statements can be considered during the DHO hearing. 28 C.R.F. § 541.8(4). As stated above, the DHO Report clearly reveals that written statements were considered by the DHO.

to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: August 28, 2017.

Omar J. Aboulhosn
United States Magistrate Judge